

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| FLIGHTLINE ESCROW, LLC and DANNY ARMSTRONG, | § | No. 08-25-00051-CV |
| | § | Appeal from the |
| Appellants, | | |
| | § | 198th District Court |
| v. | | |
| | § | of Bandera County, Texas |
| STEPHANIE LEAVELLE and JET ZONE, LLC, | § | (TC# CVDC-21-0000019) |
| Appellees. | | |

## OPINION[1]

Appellee Stephanie Leavelle (Stephanie) filed a petition for divorce against her husband, Jason Leavelle (Jason), in Bandera County in January 2021 seeking a division of their community assets and rulings on conservatorship issues with respect to their children. Stephanie amended her petition to bring tort claims against Appellant Danny Armstrong (Armstrong), claiming Jason had fraudulently transferred three million dollars in community property funds generated by Appellee Jet Zone, LLC (Jet Zone), a company owned by the couple, to Armstrong though Armstrong's company, Appellant Flightline Escrow, LLC (Flightline), with the intent to defraud Stephanie and

---

[1] The appeal was transferred to this Court from the Fourth Court of Appeals pursuant to the Texas Supreme Court's docket equalization efforts. *See* Tex. Gov't Code Ann. § 73.001. We follow the precedent of that court to the extent it conflicts with our own. *See* Tex. R. App. P. 41.3.

deprive her of her interest in the funds. The trial court judge presiding at the time granted Armstrong's motion to sever the tort claims and transfer venue of those claims to Tarrant County, where a Tarrant County judge later entered a take-nothing claim against Stephanie.

Stephanie thereafter amended her divorce petition several times, adding Flightline and Jet Zone as co-respondents, bringing tort claims against Flightline that again centered on the allegedly fraudulent transfer of the three million dollars into Flightline's accounts. Acting on behalf of Jet Zone, Stephanie also filed a cross-claim against Flightline and a third-party claim against Armstrong (collectively, the Flightline Appellants), bringing tort claims against them centering on the transfer of the same three million dollars. The Flightline Appellants filed motions to sever all pending tort claims against them and transfer venue to Tarrant County, primarily arguing that the 2022 venue determination fixed venue in Tarrant County for Stephanie's original claims against Armstrong as well as her related claims against them. The trial judge who heard the motions disagreed and issued two separate orders denying the Flightline Appellants' motions.

The Flightline Appellants appealed from both orders, and in the alternative, petitioned for mandamus asking this Court to direct the trial court to sever and transfer the claims against them to Tarrant County. We conclude that the trial court's order is not appealable, but that mandamus relief is appropriate as the 2022 venue ruling permanently fixed venue in Tarrant County for all of the pending tort claims against the Flightline Appellants.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Stephanie files tort claims against Armstrong

In January 2021, Stephanie filed her original petition for divorce against Jason in Bandera County, where the couple had been residing. Stephanie testified at a venue hearing that she and Jason owned Jet Zone, an airplane brokerage company through which Jason sold private aircraft

2

to individuals and corporations. She testified that Jason created escrow company Hillstyle Holdings into which he would typically place Jet Zone's revenue, the family's only source of income during their marriage. According to Stephanie, Jason had transferred approximately three million dollars belonging to Jet Zone into Hillstyle's escrow account—or into another unidentified escrow account—then transferred it to Flightline, which she alleged was another escrow company Jason and Armstrong had started together.

In her first and second amended petitions, which she filed in June 2022 and October 2022 respectively, Stephanie added Armstrong as a "co-respondent," bringing two tort claims against him. First, she brought a cause of action labeled "Relief from Third-Party for Fraudulent Transfer," alleging Jason fraudulently transferred at least three million dollars in community property to Armstrong through transfers to Hillstyle Holdings, LLC—a company owned and operated by Jason—and Flightline Escrow—a company owned by Armstrong and/or Armstrong and Jason jointly—"without consideration and/or for less than reasonably equivalent value," for the purpose of defrauding Stephanie "of community property rights." Stephanie alleged that, during her marriage to Jason, Armstrong was the couple's accountant for their personal and corporate finances and he therefore had knowledge of the fraudulent nature of the transfer and of Jason's "intent to injure [her] rights."

Second, Stephanie brought a cause of action against Armstrong for civil conspiracy, alleging Jason and Armstrong conspired to withhold financial information from her and fraudulently transferred the three million dollars in community property funds "into accounts held by Flightline Escrow, a company started by [Jason] and [Armstrong]." Once again, she alleged that, because Armstrong was aware of the parties' finances, he knew the transferred funds were

3

community property and the transfers were "unlawfully made for the purpose of defrauding the community estate."

Stephanie sought an order setting aside the transfer as fraudulent and declaring the assets community property and/or Stephanie's separate property; actual damages for the loss of the transferred assets; exemplary damages against both Jason and Armstrong, claiming they acted with malice; and temporary and permanent injunctive relief against Jason and Armstrong to prohibit them from conveying or encumbering the property in question.

### B. The predecessor trial judge grants Armstrong's joint motion to sever and transfer the tort claims against him to Tarrant County

In August 2022, Armstrong filed a joint motion to sever Stephanie's "fraud" and "conspiracy" tort claims against him from the divorce proceedings and transfer those claims to Tarrant County. In support, Armstrong argued the tort claims were unrelated to Stephanie's divorce claims and there were "no common question[s] of law or fact." Armstrong also argued that the court was required to transfer the claims to Tarrant County where he resides, claiming venue was improper in Bandera County pursuant to Texas Civil Practice and Remedies Code § 15.002, which provides, in relevant part, that a lawsuit shall be brought "(1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred [or] (2) in the county of defendant's residence at the time the cause of action accrued if defendant is a natural person." In an unsworn declaration, Armstrong attested to being a resident of Tarrant County without contacts with Bandera County. He further argued that none of the events Stephanie alleged in her tort claims occurred in Bandera County. The trial court ruled in favor of Armstrong, finding severance and transfer of the tort claims to Tarrant County appropriate.

4

At the same time, the trial court granted Armstrong's special exceptions, which sought to clarify Stephanie's claims pursuant to Texas Rule of Civil Procedure 91, and directed Stephanie to amend her pleadings to clarify her claims within 30 days.[2] After Stephanie filed her second amended petition, the severed tort claims against Armstrong were transferred to Tarrant County on November 30, 2022.

### C. The Tarrant County trial court issues a take-nothing judgment against Stephanie

While the tort claims were pending in Tarrant County, in March 2023, Stephanie's attorney withdrew and Stephanie did not file any amended pleadings in that court. In May 2023, Armstrong filed a no-evidence summary judgment motion, contending Stephanie failed to respond to any of his discovery requests and no evidence supported her fraudulent transfer and civil conspiracy claims. Stephanie did not file an opposition to the motion.

The district court sent at least two hearing notices to the parties, and in August 2023, it granted Flightline summary judgment motion and entered a take-nothing judgment against Stephanie on both tort claims against Armstrong. The trial court stated that it was a final judgment disposing of all claims and parties. Stephanie did not appeal.

### D. Stephanie amends her petitions adding Flightline as a co-respondent

It does not appear that any additional proceedings took place in the Bandera County court while the Tarrant County proceedings were pending. In the meantime, a new trial judge took the bench in the Bandera County court and began presiding over the parties' divorce proceedings.

---

[2] Rule 91 provides: "A special exception shall not only point out the particular pleading excepted to, but it shall also point out intelligibly and with particularity the defect, omission, obscurity, duplicity, generality, or other insufficiency in the allegations in the pleading excepted to." Tex. R. Civ. P. 91.

Beginning in December 2023, after retaining a new attorney, Stephanie filed four additional amended divorce petitions ending with her Sixth Amended Petition in September 2024. Significant to the current proceeding, in her Fourth Amended petition, Stephanie named Hillstyle, Jet Zone, and Flightline as "co-respondents," alleging Jason operated Hillstyle and Jet Zone as his alter egos.

In her Fourth Amended Petition, Stephanie brought two causes of action sounding in tort. First, on Hillstyle's behalf, she alleged breach of fiduciary duty against Flightline, maintaining that Flightline was an escrow company which held funds in trust for third parties, that it held money in trust for Hillstyle, and that it therefore owed Hillstyle a fiduciary duty. She contended Flightline breached its fiduciary duty to Hillstyle by using monies belonging to Hillstyle for Flightline's "personal gain" and by refusing Hillstyle's demands to return the money and/or to provide it with an "accurate accounting" of what happened to the money.

Second, Stephanie alleged "civil conspiracy" but did not state against whom that cause of action was directed. However, she alleged, as she did in earlier petitions, that on or about 2018, Jason and Armstrong conspired to withhold financial information from her, and transfer approximately three million dollars into Flightline's accounts "for the purpose of defrauding the community estate." Again, Stephanie sought actual and exemplary damages (without specifying against whom), temporary and permanent injunctive relief to prevent any further transfers, and the appointment of a receiver over Jet Zone and Hillstyle.

After answering the amended petition, Flightline again filed special exceptions, requesting clarification of Stephanie's claims. Stephanie thereafter filed her Sixth Amended Petition (her live pleading), bringing an identical claim for civil conspiracy as alleged in her Fourth Amended

Petition and the same claim of breach of fiduciary duty against Flightline on Hillstyle's behalf.[3]

However, Stephanie added an allegation that Flightline had given her "a 1099-MISC for personal income of one million five hundred thirty thousand seven hundred fifty five dollars," ostensibly representing her one-half interest in the transferred three million dollars. Stephanie claimed that she had never been given any of the money allegedly "assigned" to her by the 1099, and pointed to the 1099 as further proof of Flightline's fraud.[4]

### E. Jet Zone files a cross-claim against Hillstyle and Flightline plus a third-party claim against Armstrong

In June 2024, on behalf of Jet Zone, Stephanie filed a cross-claim against Flightline and a third-party claim against Armstrong. Stephanie alleged that, on or about 2020 or 2021, Jet Zone sold its primary assets to an unidentified third party through a transaction allegedly handled by Jason and Armstrong, but Jet Zone retained over three million dollars in escrowed funds after the sale, which were initially held by Hillstyle. According to the pleadings, at some point during 2021, Jason transferred his interest in Hillstyle to Armstrong, who Stephanie claimed was also Jet Zone's accountant. Stephanie alleged that, shortly after Armstrong took over Hillstyle's operations, he transferred the escrowed funds to Flightline, this time alleging Jason was its sole owner and Jet Zone had since been unable to obtain information regarding the whereabouts of the funds.

Stephanie brought a brought a cause of action for breach of fiduciary duty against the Flightline Appellants on Jet Zone's behalf, alleging they breached a fiduciary duty owed to Jet

---

[3] In her Sixth Amended Petition, Stephanie added a new co-respondent, Kahlo Investments, LLC, a now defunct LLC whose charter was forfeited in February 2024 for nonpayment of taxes. She alleged that Jason started Kahlo during their marriage to purchase a home with funds he borrowed from Armstrong. Any claim Stephanie may have against Kahlo is not at issue in this appeal.

[4] At a hearing in the trial court, Jason's attorney explained that there was some confusion regarding the issuance the 1099, contending that although it was mistakenly sent to Stephanie, it was never sent to the IRS, and accordingly, there was "no IRS 1099."

Zone when the escrowed funds were transferred to Flightline for less than their full value. Stephanie accused the Flightline Appellants of self-dealing, fraud, and malice or gross negligence in the transfer, and sought actual and exemplary damages for their alleged misconduct. She brought a second cause of action against them on Jet Zone's behalf for an alleged violation of the Texas Uniform Fraudulent Transfers Act (TUFTA), claiming the transfer was made fraudulently to render Jet Zone insolvent and defeat Jet Zone's creditors. Stephanie sought injunctive relief to prohibit the transfer of any additional escrowed funds belonging to Jet Zone. She further sought an audit, the appointment of a receiver, and damages against the Flightline Appellants for their alleged wrongdoing.

### F. The Flightline Appellants file a rule 12 motion

The Flightline Appellants filed a Rule 12 motion challenging Stephanie's authority to act on behalf of Jet Zone, contending that, because Jet Zone was an LLC, it could only act through a majority of its members and Stephanie was not its sole member. Stephanie responded that she was Jet Zone's sole member, but even if she were not, she had the right to assert Jet Zone's claim due to the failure of its other members to act on its behalf. It does not appear that the trial court ever ruled on that motion.

### G. The Flightline Appellants move to sever and transfer the tort claims against them to Tarrant County

Flightline filed a motion to sever and transfer Stephanie's tort claims against it to Tarrant County, and the Flightline Appellants jointly filed a similar motion with respect to the tort claims Stephanie filed against them on Jet Zone's behalf.[5] In their respective motions, the Flightline

---

[5] In its motion, Flightline also argued in the alternative that the trial court should dismiss the claim Stephanie brought on Hillstyle's behalf, contending Stephanie did not have standing. It does not appear that the trial court ruled on Flightline's motion to dismiss.

8

Appellants raised res judicata and collateral estoppel to argue the trial court's earlier 2022 order fixing venue of Stephanie's tort claims against Armstrong in Tarrant County had a preclusive effect that required venue of Stephanie's current tort claims in Tarrant County. According to the Flightline Appellants, her current claims involved the same alleged transfer of three million dollars and the same parties or those in privity with the original parties. In the alternative, they argued that, assuming the 2022 order did not apply, venue was proper in Tarrant County as Armstrong resided there, Flightline's principal place of business was there, and they had no contacts with Bandera County.

In response, Stephanie argued her tort claims against the Flightline Appellants were all factually related to the community property division issues in her divorce; they involved the same evidence; and she had no other way to value the community assets without including the tort claims in the divorce proceedings. She pointed out that, in his deposition, Jason said he was not sure who owned the funds at issue. She further argued venue was proper in Bandera County because all the acts and omissions she alleged occurred there.

Although Jet Zone did not file a separate response to the Flightline Appellants' motion to sever and transfer venue, after the special exceptions were filed, Jet Zone filed a second amended petition bringing the same allegations plus an allegation addressing severance and venue. In that petition, Jet Zone maintained its claims against the Flightline Appellants were properly heard in the divorce proceedings in Bandera County because they arose from the "same transaction, occurrence, or series of transactions or occurrences" at issue in Stephanie's divorce petition, i.e., the same allegedly improper transfer of community property funds "through the improper actions of Respondent Jason," all of which occurred in Bandera County.

9

### H. The trial court issues its ruling

The trial court held a hearing on the Flightline Appellants' motions, during which the parties focused primarily on whether the trial court's earlier severance and venue ruling was binding on the current tort claims against the Flightline Appellants. Following the hearing, the court issued two separate orders denying both motions to sever and transfer venue of the pending tort claims. The Flightline Appellants appealed from both orders.

The Flightline Appellants contend the trial court's orders are appealable interlocutory orders and this Court should conclude that the trial court abused its discretion in refusing to grant their motions and reverse the trial court's orders. In the alternative, the Flightline Appellants contend that, if the orders are not appealable, they are entitled to mandamus relief as the trial court committed a clear abuse of discretion and they lack an adequate remedy by appeal.

## II. THE TRIAL COURT'S ORDERS ARE NOT APPEALABLE

We first consider whether the trial court's orders denying the Flightline Appellants' motions to sever and transfer venue to Tarrant County are appealable interlocutory orders. For the reasons below, we conclude they were not.

### A. Applicable law

The Texas Civil Practice and Remedies Code expressly provides that no interlocutory appeals are permitted from a trial court's venue determination. *In re Team Rocket, L.P.*, 256 S.W.3d 257, 259–60 (Tex. 2008) (citing Tex. Civ. Prac. & Rem. Code Ann. § 15.064(a) (providing that a court shall determine venue questions from the pleadings and affidavits, and that "[n]o interlocutory appeal shall lie from the determination"); Tex. R. Civ. P. 87(6) (providing that "[t]here shall be no interlocutory appeals" from determinations made on motions to transfer venue)); *see also Elec. Data Sys. Corp. v. Pioneer Elecs. (USA) Inc.*, 68 S.W.3d 254, 257–58

10

(Tex. App.—Fort Worth 2002, no pet.) (recognizing that "[t]he legislature has provided that no interlocutory appeal is available from a trial court's determination of a venue question" and that "[g]enerally, a party must await a final judgment to appeal an erroneous venue ruling").

However, as the Flightline Appellants point out, in 2003, the Texas Legislature created a limited exception to this general rule by amending Texas Practice and Remedies Code § 15.003 to allow interlocutory appeals of a trial court's venue determination in certain cases in which there is more than one plaintiff.[6] *See* Tex. Civ. Prac. & Rem. Code Ann. § 15.003(b). Section 15.003 (a) provides, "In a suit in which there is more than one plaintiff, whether the plaintiffs are included by joinder, by intervention, because the lawsuit was begun by more than one plaintiff, or otherwise, each plaintiff must, independently of every other plaintiff, establish proper venue." Tex. Civ. Prac. & Rem. Code Ann. § 15.003(a). It further provides that "[i]f a plaintiff cannot independently establish proper venue, that plaintiff's part of the suit, including all of that plaintiff's claims and causes of action, must be transferred to a county of proper venue or dismissed, as is appropriate" except under certain four specified conditions set forth in subsections (a)(1)–(4).[7]

Subsection (b) provides, "An interlocutory appeal may be taken of a trial court's determination under Subsection (a) that (1) a plaintiff did or did not independently establish proper venue; or (2) a plaintiff that did not independently establish proper venue did or did not establish the items prescribed by Subsections (a)(1)–(4)." *Id*. § 15.003(b)(1–2). As the Texas Supreme Court

---

[6] We note that the prior version of § 15.003, which was amended effective September 1, 2003, did not provide for appeals of this nature. *See Rush Truck Centers of Tex., L.P. v. Sayre*, No. 24-0040, 2025 WL 1599527, at *1 (Tex. June 6, 2025).

[7] Those conditions are: "(1) joinder of that plaintiff or intervention in the suit by that plaintiff is proper under the Texas Rules of Civil Procedure; (2) maintaining venue as to that plaintiff in the county of suit does not unfairly prejudice another party to the suit; (3) there is an essential need to have that plaintiff's claim tried in the county in which the suit is pending; and (4) the county in which the suit is pending is a fair and convenient venue for that plaintiff and all persons against whom the suit is brought." Tex. Civ. Prac. & Rem. Code Ann. § 15.003(a)(1)–(4).

recently explained, this statute is limited and only applies when there are multiple plaintiffs and when the trial court has made an independent determination of venue with respect to each plaintiff. *See Rush Truck Centers of Tex., L.P. v. Sayre*, No. 24-0040, 2025 WL 1599527, at *1 (Tex. June 6, 2025) (recognizing that the "mere presence of multiple plaintiffs in front of the [trial court] does not suffice to invoke appellate jurisdiction" and that "Section 15.003(b) permits interlocutory appeals only in cases where a plaintiff's independent claim to venue is at issue"). "Put differently, Section 15.003(b) applies only to venue determinations to retain or transfer one of the plaintiffs within a suit—not to every venue determination that happens to involve multiple plaintiffs." *Id.* at *4.

## B. Analysis

At issue here is whether this lawsuit is one in which there is more than one plaintiff for which the trial court made an independent determination of venue within the meaning of § 15.003. The Flightline Appellants contend that, although Stephanie was the original and only plaintiff in the case, Jet Zone should also be considered a "plaintiff" for purposes of § 15.003 based on its third-party petition against Armstrong and cross-claim against Flightline. In making their argument, the Flightline Appellants point to the broad language in § 15.003 (a) providing that it applies to venue determinations made in suits in which multiple plaintiffs began the suit, as well as suits in which plaintiffs were brought in by "joinder," "intervention," "or *otherwise.*" According to the Flightline Appellants, despite "Jet Zone's nominal status as a cross/third-party plaintiff," it is "'otherwise' a plaintiff under § 15.003." In turn, they argue the trial court's orders determining venue involved multiple plaintiffs and were therefore appealable under § 15.003(b). We disagree.

As Stephanie points out, when, as here, counterclaims, cross-claims, and third-party claims are at issue, § 15.062—not § 15.003—governs venue determinations. Section 15.062 provides that

12

"[v]enue of the main action shall establish venue of a counterclaim, cross claim, or third-party claim properly joined under the Texas Rules of Civil Procedure or any applicable statute." Tex. Civ. Prac. & Rem. Code Ann. § 15.062 (a). Based on the plain language of the Code, venue of third-party claims is determined by venue of the main action. *See Perryman v. Spartan Tex. Six Capital Partners, Ltd.*, 546 S.W.3d 110, 130–32 (Tex. 2018). Significantly, § 15.062 provides no exceptions to the general rule regarding the non-appealability of venue determinations.

The Third Court of Appeals examined the interplay between § 15.003 and § 15.0062 in *Pedison USA, Inc. v. CNC Constr. Inc.*, No. 02-16-00271-CV, 2016 WL 6900877, at *1–2 (Tex. App.—Fort Worth Nov. 23, 2016, no pet.) (mem. op.). In *Pedison*, the original suit was between one plaintiff and one defendant; however, the defendant then brought a claim against a third-party defendant. *Id.* at *1. The original plaintiff subsequently nonsuited the case, and the third-party defendant filed a motion to sever the claims against it and transfer venue. *Id*. The trial court denied the motion, and the third-party defendant attempted to appeal the order pursuant to § 15.003(b), contending it was one of "multiple plaintiffs" within the meaning of that Code provision. *Id.* The court of appeals disagreed, concluding § 15.003 is "inapplicable to a defendant's third-party claim against third-party defendants." *Id.* at *2 (citing *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 558 n.16 (Tex. 2014) ("[A] third-party plaintiff . . . is not a 'plaintiff' but a '*defendant* suing a non-party.'"); *Harding Bars, LLC v. McCaskill*, 374 S.W.3d 517, 520 (Tex. App.—San Antonio 2012, pet. denied) (holding that filing of a cross-claim did not transform party into a "plaintiff" because party was already part of the suit)). The court went on to hold that "[s]ection 15.062 governs venue of third-party claims, not section 15.003." *Id.* (citing *Hopson v. Dallas ISD*, No. 05–02–01819–CV, 2003 WL 402881, at *2 (Tex. App.—Dallas Feb. 24, 2003, pet. denied) (mem. op.) (holding that joinder of third–party claims is governed by § 15.062, not

13

§ 15.003)). The court concluded that "no statutory authority exists for Appellants' interlocutory appeal of the trial court's denial of their motion to sever and transfer venue of the third-party claims." *Id.*

Similarly, the Fourth Court of Appeals, whose precedent we must follow, relied on the analysis in *Pedison* in concluding that § 15.003 does not apply in a situation in which a lawsuit had been filed by one plaintiff, but where a defendant filed a cross-claim against the plaintiff. *Verdun Oil & Gas, LLC v. Quintanilla*, No. 04-21-00156-CV, 2021 WL 1894901, at *2 (Tex. App.—San Antonio May 12, 2021, pet. denied) (mem. op.). Specifically, the court held that a defendant's filing of a cross claim against a plaintiff did not "transform" him into a "plaintiff" for purposes of § 15.003. *Id.* (citing *Harding Bars, LLC v. McCaskill*, 374 S.W.3d 517, 520 (Tex. App.—San Antonio 2012, pet. denied)). The court therefore held that § 15.003 had no applicability to the case, and that instead, the venue provisions in § 15.062 governed the case. *Id.* (citing *Pedison*, 2016 WL 6900877 at *1–2; *Harding Bars*, 374 S.W.3d at 520). Consequently, the court held that the trial court's venue determination was not an appealable interlocutory order under § 15.003(b). *Id.* at *2–3.

Here, Stephanie named Jet Zone as a defendant or "co-respondent" in the divorce proceeding, and Jet Zone then filed its third-party claim against Armstrong and its cross-claim against Flightline. Neither action transformed Jet Zone into a plaintiff for purposes of § 15.003. We therefore conclude that § 15.003 does not apply to the trial court's venue decision; instead, § 15.062 is the applicable venue statute. To hold otherwise would require us to ignore the provisions in § 15.062 governing venue determinations in cases involving cross-claimants and third-party defendants, and would render the provisions of § 15.062 meaningless. *See In re Cnty. of Galveston*, 211 S.W.3d 879, 882 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (recognizing

that if it were to apply the venue provisions in § 15.015 in the Code when a third-party defendant had been named in the case, rather than § 15.062, the provisions in § 15.062 would be rendered meaningless). This we decline to do.

We therefore conclude that we lack jurisdiction over this interlocutory appeal, and we dismiss the appeal.

## III. THE FLIGHTLINE APPELLANTS ARE ENTITLED TO MANDAMUS RELIEF

We next consider the Flightline Appellants' alternative request for mandamus relief based on the preclusive effect of the trial court's 2022 venue ruling.

### A. Standard for granting mandamus relief

In general, mandamus relief is available only to correct a clear abuse of discretion when there is no other adequate remedy at law. *In re Acceptance Indem. Ins. Co.*, 562 S.W.3d 655, 659 (Tex. App.—San Antonio 2018, no pet.) (citing *In re M–I, L.L.C.*, 505 S.W.3d 569, 574 (Tex. 2016) (orig. proceeding)). A trial court clearly abuses its discretion when its decision is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* (citing *M–I, L.L.C.*, 505 S.W.3d at 574); *see also In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (per curiam) (recognizing same). A trial court has no discretion in determining what the law is or in applying the law to the particular facts. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004). Therefore, if the trial court fails to analyze or apply the law correctly, it has clearly abused its discretion. *Acceptance Indem. Ins. Co.*, 562 S.W.3d at 659

"Mandamus should not issue to correct grievances that may be addressed by other remedies." *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 207 (Tex. 2009) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992)). But, when "[u]sed selectively, mandamus can 'correct clear errors in exceptional cases and afford appropriate

guidance to the law without the disruption and burden of interlocutory appeal.'" *Id*. (quoting *Prudential.*, 148 S.W.3d at 138).

## B.   The doctrines of res judicata and collateral estoppel

In arguing the trial court committed a clear abuse of discretion in denying their motions to sever and transfer venue, the Flightline Appellants primarily rely on the doctrines of res judicata and collateral estoppel, contending the trial court's 2022 venue determination fixed venue in Tarrant County for the tort claims pending against them.[8]

As the Fourth Court of Appeals has recognized, "res judicata is the generic term for a group of related concepts concerning the conclusive effects given final judgments." *City of San Antonio v. Cortes*, 468 S.W.3d 580, 585 (Tex. App.—San Antonio 2015, pet. denied) (citing *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 628 (Tex. 1992)). "Within this doctrine, there are two principal categories: (1) claim preclusion (also known as res judicata); and (2) issue preclusion (also known as collateral estoppel)." *Id.* "For res judicata to apply, there must be: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action." *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 449 (Tex. 2007) (citing *Amstadt v. U.S. Brass Corp*., 919 S.W.2d 644, 652 (Tex. 1996)). For collateral estoppel to apply, a party must establish three factors: "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). Collateral estoppel is "frequently

---

[8]  The Flightline Appellants also argue that, even if collateral estoppel did not apply, the trial court committed a clear abuse of discretion by denying their motions, as venue is proper in Tarrant County rather than Bandera County. Because we agree that collateral estoppel applies, we do not address this alternative argument.

characterized as issue preclusion because it bars relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit, regardless of whether the second suit is based upon the same cause of action." *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984) (citing *Wilhite v. Adams*, 640 S.W.2d 875, 876 (Tex. 1982); *Benson v. Wanda Petroleum Company*, 468 S.W.2d 361, 362 (Tex. 1971)). The doctrine of collateral estoppel "is designed to promote judicial efficiency and to prevent inconsistent judgments by preventing any relitigation of an ultimate issue of fact." *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 579 (Tex. 2001).

## C. *Team Rocket* and the application of res judicata and collateral estoppel to venue determinations

In *Team Rocket*, the Texas Supreme Court discussed res judicata and collateral estoppel in the context of venue rulings. *Team Rocket*, 256 S.W. 3d at 260–61. In that case, the plaintiffs initially filed a wrongful death lawsuit against the defendants in Harris County where the plaintiffs resided. *Id.* at 258. The defendants challenged venue, asserting that they did not reside in Harris County and that a substantial portion of the events giving rise to the cause of action did not occur there. *Id.* at 258–59 (citing Tex. Civ. Prac. & Rem.Code § 15.002(a)(1)–(2). The Harris County trial court determined venue was proper in Williamson County and transferred the case. *Id.* at 259. The plaintiffs then voluntarily nonsuited their case and refiled in Fort Bend County. *Id.* Relying on the doctrine of collateral estoppel, the defendants moved to transfer venue to Williamson County based on the Harris County trial court's prior venue order. *Id.* After the Fort Bend County trial court denied the motion, the defendants filed a petition seeking mandamus relief in the court of appeals, but the court denied the petition. *Id.* The defendants then filed a petition for mandamus in the Texas Supreme Court.

17

In granting the defendants' relief, the Texas Supreme Court first agreed with the defendants' argument that "only one venue determination may be made in a proceeding and that Texas Rule of Civil Procedure 87 specifically prohibits changes in venue after the initial venue ruling." *Id*. (citing Tex. R. Civ. P. 87(5) ("if an action has been transferred to a proper county in response to a motion to transfer, then no further motions to transfer shall be considered")). And because, at least under the facts in that case, there was no right to appeal the venue decision, the court concluded that "once the Harris County trial court transferred the cause to the proper venue of Williamson County, venue was fixed permanently in Williamson County for these causes of action between these parties." *Id.* at 260.

In reaching its conclusion, the court pointed to the "long-standing and fundamental judicial doctrines of res judicata and collateral estoppel, which 'promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation' of matters that have already been decided or could have been litigated in a prior suit." *Id*. (quoting *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994)). The court recognized that "[j]ust as a decision on the merits cannot be circumvented by nonsuiting and refiling the case, a final determination fixing venue in a particular county must likewise be protected from relitigation." *Id*. It further explained that when a court makes a venue decision under Texas Civil Practice and Remedies Code § 15.064, since there is no appeal from such a decision, "[t]he only remedy afforded by the Legislature . . . is to proceed with trial in the transferee county and appeal any judgment from that court on the basis of alleged error in the venue ruling." *Id*. at 261 (citing Tex. Civ. Prac. & Rem. Code Ann. § 15.064 (b) ("On appeal from the trial on the merits, if venue was improper it shall in no event be harmless error and shall be reversible error.")). But the court pointed out that the plaintiffs did not avail themselves of that remedy, and "instead attempted to

18

circumvent the venue ruling by nonsuiting and refiling" their petition in another county. *Id.* at 261. It held that because the Harris County court's venue determination was "conclusive as to those parties and claims" and permanently fixed venue in Williamson County, the venue determination could not be "overcome by a nonsuit and subsequent refiling in another county." *Id*. at 260. To interpret the provisions otherwise would allow forum shopping, a practice the court has repeatedly prohibited. *Id*. at 263 (citing *In re Autonation, Inc*., 228 S.W.3d 663, 667–68 (Tex. 2007)). The court therefore "conditionally grant[ed] the writ of mandamus directing the Fort Bend County trial court to vacate its venue order and transfer the [plaintiffs'] case to Williamson County." *Id*.

### D. The decision to sever the claims essential to the court's 2022 venue determination

Arguing that *Team Rocket* does not govern her case, Stephanie first notes that *Team Rocke*t did not involve a situation, as here, in which the trial court severed the parties' claims before transferring venue. Moreover, she points out that, in the present case, the trial court could not have transferred her pending tort claims to a different county without first severing them from the divorce proceeding. In turn, she contends the trial court properly refused to sever her newly raised tort claims, maintaining they were directly related to her community property claims and it would have been error for the court to split them into two different court proceedings. *See, e.g.*, *In re Burgett*, 23 S.W.3d 124, 127 (Tex. App.—Texarkana 2000, no pet.) (concluding that the trial court clearly abused its discretion by severing wife's "third-party fraud action" brought in her divorce proceeding against a corporation she and her husband owned along with the third-party defendant, where her claims for fraud, conspiracy, and breach of fiduciary duty involved ownership of community property assets, and therefore the claims had to "be explored and determined" before the court could "determine the nature, extent, and value of the community property and make a proper division of it").

19

However, as explained above, the trial court was not writing on a clean slate in determining the propriety of severing and transferring venue of Stephanie's newly raised tort claims. Nor is this Court. Instead, our focal point is whether the trial judge's 2022 venue determination was final and conclusive with respect to Stephanie's pending tort claims. As Stephanie herself recognizes, when the trial judge transferred venue of her tort claims to Tarrant County, it could not have done so without first determining that severance was proper. In fact, the 2022 order expressly states that the court was severing Stephanie's tort claims for "fraud" and "civil conspiracy" from her divorce case and transferring those severed claims to Tarrant County. [9] Accordingly, the court's determination that severance was proper was fundamental to the venue determination, and to the extent collateral estoppel applies to the venue determination, it will apply to the court's severance determination as well.[10] *See generally Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 802 (Tex. 1992) ("Collateral estoppel also precludes the relitigation of essential issues of law that were litigated and determined in a prior action.").

### E. Venue of Stephanie's tort claims against Flightline fixed in Tarrant County

We first consider whether the doctrines of collateral estoppel or res judicata required the trial court to apply the 2022 venue determination to Stephanie's newly raised tort claims against

---

[9] As set forth above, the Tarrant County trial court, out of an abundance of caution, also stated in its final judgment that it was severing those tort claims from the divorce proceeding.

[10] Stephanie also contends that the Flightline Appellants did not adequately brief the issue of severance, and we should therefore dismiss both their appeal and their mandamus petition on briefing waiver. *See Bertucci v. Watkins*, 709 S.W.3d 534, 541 (Tex. 2025) (recognizing that the Texas Rules of Appellate Procedure "require adequate briefing" and that "a failure to comply with these rules can result in waiver") (citing Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.")). As the Flightline Appellants point out, however, they did in fact address the issue of severance both in the trial court and in their appellate briefing. In any event, the question before us is not whether severance was proper, but whether the trial court's prior ruling on severance and venue in 2022 precluded the trial court from making a different ruling in 2024.

20

Flightline. Stephanie appears to concede that after her tort claims against Armstrong were transferred to Tarrant County and the court issued its final take-nothing judgment, the trial court's 2022 venue determination became final as to those claims. *Team Rocket*, 256 S.W.3d at 261. However, she contends the 2022 order has no preclusive effect on the tort claims that are currently pending against Flightline because they are "new claims against a different defendant." Flightline counters that the 2022 venue ruling permanently fixed venue for her newly raised tort claims, as they involved the same subject matter, i.e., whether the three million dollars was fraudulently transferred to Flightline's accounts, and the same parties or those in privity with the original parties. Flightline therefore contends that, consistent with the trial court's opinion in *Team Rocke*t, the trial court's 2022 venue ruling has a final and preclusive effect in determining the proper venue of Stephanie's current claims.[11] *See Team Rocket*, 256 S.W.3d at 261.

### (1) Effect of Flightline's special exceptions

As a preliminary matter, Stephanie maintains Flightline is precluded from arguing that her current claims involved the same subject matter because Flightline filed special exceptions to her Fourth Amended Petition arguing her claims did not provide sufficient notice of the basis of her allegations. According to Stephanie, if Flightline did not understand the nature of her allegations, it would be illogical if not impossible for Flightline to argue that her claims centered on the same subject matter as the claims that Stephanie brought against Armstrong. According to Stephanie, Flightline therefore essentially "pled [itself] out of 'preclusive theory.'" We note, however, that after Flightline filed its special exceptions to Stephanie's Fourth Amended Petition, she filed her

---

[11] Flightline does not argue that Stephanie was collaterally estopped from bringing her claims against Flightline by the Tarrant County's final judgment in which it rendered a take-nothing judgment against Stephanie. Instead, Flightline's sole argument is that the trial court's 2022 venue determination collaterally estopped her from re-litigating the venue issue. That is the only issue we address in this appeal.

21

live petition. Flightline did not file special exceptions to that petition, thereby impliedly acknowledging it understood her claims. Moreover, we conclude that the allegations in Stephanie's live petition are clear enough to allow us to determine whether her claims centered on the same subject matter as her earlier claims against Armstrong.

### (2)   Stephanie's tort claims involve the same subject matter

Turning to the question of whether Stephanie's two tort claims against Flightline involve the same subject matter as her claims against Armstrong, we first note that her civil conspiracy claim against Flightline is an almost verbatim duplication of her civil conspiracy claim against Armstrong. In both petitions, Stephanie alleged Armstrong and Jason conspired to conceal financial information and transfer three million dollars of Jet Zone's income belonging to the marital estate "into accounts held by Flightline Escrow" for the purpose of defrauding her and depriving her of her share of the community funds. Although Stephanie does not name Armstrong as a co-respondent in her live pleading, her current civil conspiracy claim appears to be directed at Armstrong rather than Flightline, as she expressly alleges that the conspiracy was between Jason and Armstrong, not between Jason and Flightline. We therefore conclude that these two claims share the same subject matter.

In her second cause of action against Flightline, Stephanie attempts to recast her claim somewhat, purporting to bring a cause of action for breach of fiduciary duty on behalf of Hillstyle, claiming Flightline owed it a fiduciary duty, which Flightline breached when it allegedly used Hillstyle's funds for its "own personal gain." But collateral estoppel may still apply to different tort claims based on the same subject matter. As the Fourth Court of Appeals has recognized, collateral estoppel "bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, *even if the issue recurs in*

22

*the context of a different claim.*" *City of San Antonio*, 468 S.W.3d at 586 (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (emphasis in original)). Thus, even if a plaintiff brings "a slightly different claim [if] it is based on the same facts as the first proceeding [then] collateral estoppel would still apply." *Id*. (citing *Proctor v. Dist. of Columbia*, 74 F. Supp.3d 436, 451 (D. D. C. 2014)).

A closer examination of Stephanie's breach-of-fiduciary-duty cause of action reveals that it is based on the same alleged facts about which Stephanie complained in her earlier fraud and civil conspiracy claims against Armstrong. As in her earlier pleadings, Stephanie alleges Jason transferred funds generated from Jet Zone to Hillstyle then "coordinated" with Armstrong to conceal financial information and transfer the money to Flightline to defraud her. Although Stephanie alleged she was bringing her claim on behalf of Hillstyle, she sought damages on her own behalf, again alleging the transferred funds were community property and Flightline's wrongdoing deprived her of her interest.[12] We therefore conclude that this claim also centered on the same subject matter she raised in her earlier pleadings against Armstrong.

### (3) Armstrong and Flightline in privity for purposes of collateral estoppel

We next consider whether Stephanie's claims involved the same parties or those in privity with the original parties for purposes of applying the 2022 venue determination. Stephanie finds it significant that her original claims were against Armstrong rather than Flightline. As Flightline notes, however, strict mutuality of parties is not required to apply the doctrine of collateral estoppel; to the contrary, collateral estoppel applies in cases in which the parties, including newly

---

[12] In her pleading, Stephanie also alleged Hillstyle was damaged by Flightline's actions, as Hillstyle had an interest in the transferred funds and Flightline was holding the money in its account and refusing to return it. But there is nothing in the record to suggest that Stephanie had standing to bring a claim on Hillstyle's behalf; to the contrary, she alleged in her pleadings and testified at the venue hearing that Jason had created Hillstyle as his own company and she had no membership interest. Nor was Hillstyle named as a plaintiff in the case. Accordingly, Stephanie's claim against Flightline was just that: a claim against Flightline for her own alleged damages.

named defendants, are in privity with the original defendants. *See First Sabrepoint Capital Mgmt., L.P. v. Farmland Partners Inc.*, 712 S.W.3d 75, 87 (Tex. 2025) (recognizing that when new parties are added as defendants, sufficient evidence must establish that they were in privity with the original named defendant before the doctrine of collateral estoppel will apply) (citing *Wilhite*, 640 S.W.2d at 876 ("Under a plea of collateral estoppel, essential issues of fact . . . are binding in a subsequent action between the same parties and those who stand in privity with them.")).

Thus, a plaintiff may not circumvent a venue ruling by nonsuiting their claims—or by allowing their claims to be reduced to judgment—then refiling new claims involving the same factual issues against the original parties or parties in privity therewith. *See Miller v. State & Cnty. Mut. Fire Ins. Co.*, 1 S.W.3d 709, 713 (Tex. App.—Fort Worth 1999, pet. denied) (concluding that where multiple suits were filed in an insurance coverage case, collateral estoppel applied to the trial court's venue determination in the original suit and it was thereby binding on subsequently filed suits involving the same subject matter, where parties were in privity with the original party); *see also Ryan Marine Services, Inc. v. Hoffman*, 668 S.W.3d 171, 177 (Tex. App.—Houston [1st Dist.] 2023, no pet.) (concluding that trial court's venue ruling in appellees' first suit involving a collision between two vessels at sea was final, and the venue decision could not be "circumvented" by nonsuiting the case and refiling the suit with the addition of a new negligence claim and a new defendant, where the same subject matter, i.e., the collision, was at issue) (citing *In re Lowe's Home Centers, L.L.C.*, 531 S.W.3d 861 (Tex. App.—Corpus Christi–Edinburg 2017, orig. proceeding)).

"There is no general definition of privity that can be automatically applied in all res judicata cases; the circumstances of each case must be examined." *Getty Oil Co.*, 845 S.W.2d at 800; *see also Avila v. St. Luke's Lutheran Hosp.*, 948 S.W.2d 841, 852 (Tex. App.—San Antonio 1997, pet. denied) (recognizing that "there is no generally prevailing definition of privity which can be

24

automatically applied to all cases involving the doctrine of res judicata and the determination of who are privies requires careful examination into the circumstances of each case as it arises"). However, it is well-established that "parties may be in privity if (1) they 'control an action,' (2) 'their interests can be represented by a party to the action,' or (3) they are 'successors in interest.'" *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 225 (Tex. 2022) (quoting *Amstadt*, 919 S.W.2d at 653). Stated otherwise, "[p]rivity exists if the parties share an identity of interests in the basic legal right that is the subject of litigation." *Raddatz v. Gem Rental Properties, LLC*, No. 04-16-00365-CV, 2017 WL 685751, at *2 (Tex. App.—San Antonio Feb. 22, 2017, no pet.) (mem. op.) (citing *Amstadt*, 919 S.W.2d at 653).

Here, both Armstrong and Flightline share the same basic "legal interest" in defending against Stephanie's claims, i.e., in attempting to establish they did not engage in any wrongdoing with respect to concealing financial information or allegedly transferring funds into Flightline's accounts. In her own pleadings, Stephanie has repeatedly alleged that Flightline was a company owned and operated by Armstrong. And in both of her tort claims in her live petition, she alleges Jason either conspired with Armstrong or coordinated with him in making the allegedly fraudulent transfer to Flightline.[13] Accordingly, we conclude that Armstrong and Flightline stood in privity with each other in terms of Stephanie's allegations of wrongdoing for collateral estoppel purposes. *See Mendez v. Haynes Brinkley & Co.*, 705 S.W.2d 242, 245 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.) (recognizing that the insurance company and its alleged agent were in privity for

---

[13] Stephanie contends Armstrong and Flightline were not in privity because she sued them in "different capacities." According to Stephanie, in her earlier petitions, she sued Armstrong in his individual capacity, while in her current suit, she is suing Flightline "as a fiduciary of Hillstyle Holdings." This is only true of her claim for breach of fiduciary duty but not for her claim of civil conspiracy. In any event, we view this distinction as one without a difference. Regardless of whether Flightline was acting on behalf of Hillstyle, Stephanie viewed Armstrong and Flightline as virtually the same entities, and she names them both as actors involved in the alleged breach.

purposes of applying the doctrine of collateral estoppel where the plaintiff alleged the company's acts of wrongdoing occurred only through its agent).

We therefore conclude that the trial court's 2022 venue determination applies to Stephanie's current tort claims against Flightline and is conclusive as to those claims. Accordingly, the trial court committed a clear abuse of discretion when it denied Flightline's motion to sever Stephanie's tort claims and transfer venue to Tarrant County.

### F. Venue of Jet Zone's claims against the Flightline Appellants fixed in Tarrant County

We similarly conclude that the doctrine of collateral estoppel applies to the trial court's 2022 venue determination with respect to Jet Zone's tort claims against the Flightline Appellants.

### (1) The effect of the Flightline Appellants' special exceptions

Jet Zone contends the Flightline Appellants are precluded from arguing that its claims involved the same subject matter as Stephanie's earlier claims against Armstrong based on their filing of special exceptions. As Stephanie did with respect to her claims against Flightline, Jet Zone argues that if the Flightline Appellants were not able to understand the nature of its allegations, they cannot now argue that its claims cover the same subject matter as the claims Stephanie originally brought against Armstrong. We note, however, that after the Flightline Appellants filed their special exceptions, Jet Zone filed its Second Amended Petition, which became Jet Zone's live pleading. The Flightline Appellants did not file special exceptions to that petition, impliedly acknowledging that they understood the nature of Jet Zone's allegations. Moreover, we conclude that the allegations in Jet Zone's Second Amended Petition are clear enough to allow us to determine whether the claims in that petition centered on the same subject matter as Stephanie's earlier claims against Armstrong.

### (2)    Jet Zone's claims involve same subject matter

Turning to the question of whether Jet Zone's two tort claims against the Flightline Appellants involve the same subject matter as Stephanie's claims against Armstrong, we conclude, as we did with her claims against Flightline, that although she recast her claims to bring different causes of action against the Flightline Appellants, fundamentally, they centered on the same issue—whether the three million dollars was fraudulently transferred to Flightline's accounts.

In its first cause of action, Jet Zone alleged the Flightline Appellants owed Jet Zone a fiduciary duty, which they breached by allegedly transferring the three million dollars in funds generated from Jet Zone's business to other entities for less than their full value. In its second cause of action, Jet Zone alleged a TUFTA violation, claiming the Flightline Appellants transferred the funds in question from Jet Zone to themselves and/or to third parties knowing the transfer would render Jet Zone insolvent and unable to pay its creditors.

These claims, although differing in nature and name from the claims Stephanie originally brought against Armstrong for fraud and civil conspiracy, were again based on the same subject matter and involved the same factual issue of whether the same three million dollars was wrongfully transferred to either Armstrong or Flightline. In fact, in the venue statement Jet Zone filed in support of its Second Amended Petition, Jet Zone expressly alleged that its claims involved "[t]he same transaction, occurrence, or series of transactions or occurrences" Stephanie alleged against Jet Zone and Hillstyle in her "Original Claim," which Jet Zone described as centering on Jason's "improper actions" of transferring the funds in question to Hillstyle and subsequently to "Flightline and/or Armstrong." Jet Zone further alleged the "subject matter" of its claims against the Flightline Appellants was the same as the "subject of the Original Claim," centering on the "whereabouts" of the money and the "Defendants' improper handling of Jet Zone's funds."

27

We therefore conclude that the claims that Stephanie brought on behalf of Jet Zone center on the same subject matter as her claims against Armstrong for purposes of collateral estoppel.

### (3) Parties were in privity for collateral estoppel purposes

Finally, we consider whether the parties were all in privity for purposes of applying the doctrine of collateral estoppel to the trial court's 2022 venue determination. We have already concluded that Armstrong and Flightline were in privity with each other for purposes of collateral estoppel with respect to the tort claims against them involving the transferred funds. The only remaining question is whether Stephanie and Jet Zone were in privity as well.

Jet Zone contends it is not in privity with Stephanie with respect to its claims, as their "legal interests" in the property at issue are different—Stephanie is seeking reimbursement of the funds to the marital estate, while Jet Zone is asserting its own interest in the transferred funds. However, as the Flightline Appellants note, this is not the only basis for finding the parties in privity. Instead, as set forth above, parties are considered in privity for purposes of applying either collateral estoppel or res judicata to a claim based on a finding that one party is exerting control over the other in the litigation and/or that one party is representing the interests of the other party. *See Getty Oil*, 845 S.W.2d at 800 ("Those in privity with a party may include persons who exert control over the action [and] persons whose interests are represented by the party . . . .").

Here, Stephanie's own pleadings establish that she was exerting control over Jet Zone's claims against the Flightline Appellants. She alleged she was the "record owner of membership interests in Jet Zone at all relevant [times]," and she could "fairly and adequately represent[] the interests of Jet Zone and the interests of other shareholders similarly situated in enforcing its rights." In response to the Flightline Appellants' Rule 12 motion contesting her authority to represent Jet Zone, Stephanie again alleged she was Jet Zone's "sole member" and had authority

to bring the lawsuit. We therefore conclude that, based on Stephanie's own factual admissions, she and Jet Zone were in privity for collateral estoppel purposes.

Accordingly, the trial court's 2022 order fixed venue for Jet Zone's tort claims against the Flightline Appellants in Tarrant County. We therefore conclude the trial court clearly abused its discretion in denying the Flightline Appellants' motion to sever and transfer venue of those claims to Tarrant County.

### G. The Flightline Appellants lack an adequate remedy at law

Finally, we examine whether the Flightline Appellants have an adequate remedy at law. Stephanie and Jet Zone contend they have an adequate remedy, as they may appeal the trial court's final judgment and contest the trial court's venue determination at that time. She cites the Texas Supreme Court's holding in *Walker v. Packer*, in which the court reaffirmed its position that mandamus will "issue only where there is no adequate remedy by appeal," and that "[a]n appellate remedy is not inadequate merely because it may involve more expense or delay than obtaining an extraordinary writ." *See Walker*, 827 S.W. 2d at 833.

A court, however, will not deny mandamus relief simply because a party may later challenge a trial court's interim order on appeal from a final judgment; such a rule would swallow the rule allowing mandamus relief whole, as virtually any interim order may be challenged in such an appeal. Instead, as the Flightline Appellants points out, the question of whether a party has an adequate appellate remedy is determined by "balancing the benefits of mandamus review against the detriments." *Team Rocket*, 256 S.W.3d at 262 (citing *Prudential*, 148 S.W.3d at136). This is In *Team Rocket*, the court noted that one consideration is "whether mandamus will preserve important substantive and procedural rights from impairment or loss." *Id*. The court noted that the Texas venue statutes create important rights between the parties, and allowing the plaintiffs to defy

a trial court's venue ruling by nonsuiting and refiling elsewhere impaired the defendant's procedural rights. *Id.* Here, too, we conclude that Stephanie's actions in allowing her original tort claims to be dismissed by the Tarrant County trial court without filing an appeal, then attempting to recast her tort claims in Bandera County resulted in the same impairment of the Flightline Appellants' rights.

In *Team Rocket*, the court also considered whether "mandamus will spare litigants and the public 'the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.'" *Id*. (quoting *Prudential*, 148 S.W.3d at 136). The court noted that although it does not generally grant a petition for mandamus for venue determinations absent extraordinary circumstances, it has done so in the past—particularly when the trial court has clearly failed to follow the law in applying the venue statute and issued a ruling that "would inevitably result in considerable expense to taxpayers and defendants, requiring defendants to proceed to trial in the wrong county is not an adequate remedy." *Id*. (quoting *Prudential*, 148 S.W.3d at 137). While the court recognized that an appellate remedy is not inadequate merely because of delay or expense, "extraordinary relief can be warranted when a trial court subjects taxpayers, defendants, and all of the state's district courts to meaningless proceedings and trials." *Id*.

Here, we agree with the Flightline Appellants that this case involves extraordinary circumstances, as not only did the Bandera County court initially transfer Stephanie's court claims to Tarrant County, but the Tarrant County trial court also issued a final judgment on those claims, finding she had no evidence to support them. To allow her to recast her claims, and refile them again in Bandera County when the trial court's 2022 venue determination permanently fixed venue in Tarrant County would result in just such a "meaningless" trial in the wrong county. We conclude that the Flightline Appellants therefore have no adequate remedy at law and that mandamus relief

30

is appropriate. *See In re Lowe's Home Centers, L.L.C.*, 531 S.W.3d at 877 (concluding that, where a Starr County court made an initial venue determination that would preclude an Hidalgo County court from addressing the issue of venue, mandamus would issue to correct the Hidalgo County court's failure to give effect to that determination) (citing *Team Rocket*, 256 S.W.3d at 260; *Fincher v. Wright*, 141 S.W.3d 255, 264 (Tex. App.—Fort Worth 2004, no pet.).

## IV. CONCLUSION

For the reasons described above, we conditionally grant the writ of mandamus and direct the Bandera County trial court to grant the Flightline Appellants' motions to sever Stephanie and Jet Zone's tort claims from her divorce petition and transfer venue of those tort claims to Tarrant County. The writ will issue only if the court fails to do so.

LISA J. SOTO, Justice

June 30, 2025

Before Salas-Mendoza, C.J., Palafox and Soto, JJ.